UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

James Stile

   v.                                                            Civil No. 17-cv-406-JD
                                                                       Opinion No. 2019 DNH 065

David Dubois, et al.

O R D E R

James Stile, who is a federal prisoner proceeding pro se and in forma pauperis, brought suit against the Strafford County Sheriff and deputies in the Sheriff's office, Strafford County, the Strafford County Administrator, the Strafford County Department of Corrections ("SCDC") Superintendent and officers, and the United States Marshals Service in the District of Maine and individual marshals. His claims arose from an incident that occurred in September of 2014, while Stile was a pretrial detainee held at the Strafford County Department of Corrections awaiting trial in the District of Maine. He alleges claims for violation of the Fourteenth Amendment under 42 U.S.C. § 1983 and state law claims.

The SCDC, Bruce Pelkie, Robert Farrell, and Robert Hayden move for summary judgment on the ground that Stile did not exhaust the administrative remedies that were available to him. Stile did not object to the defendants' motion but filed his own

motion for summary judgment on the issue of exhaustion.  The
SCDC defendants object to Stile's motion.

## Standard of Review

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "[A] fact is material if it has the potential of affecting the outcome of the case." Leite v. Bergeron, 911 F.3d 47, 52 (1st Cir. 2018) (internal quotation marks omitted).  "A genuine issue of material fact only exists if a reasonable factfinder, examining the evidence and drawing all reasonable inferences helpful to the party resisting summary judgment, could resolve the dispute in that party's favor." Town of Westport v. Monsanto Co., 877 F.3d 58, 64-65 (1st Cir. 2017) (internal quotation marks omitted); Flood v. Bank of Am. Corp., 780 F.3d 1, 7 (1st Cir. 2015).

The same standard applies on cross motions for summary judgment.  The court determines whether either moving party is entitled to judgment as a matter of law.  Wells Real Estate Inv. Tr. II, Inc. v. Chardon/Hato Rey P'ship, S.E., 615 F.3d 45, 51 (1st Cir. 2010).

Background

Stile's claims arise from the circumstances and events that occurred on September 5, 2014, when he was taken from his cell at the SCDC and transported to Maine for a hearing in his criminal case. At that time, Stile was a federal pretrial detainee who was in the custody of the SCDC pursuant to an agreement with the United States Marshals Service. Stile alleges that the officers involved in moving and transporting him used excessive force in violation of his Fourteenth Amendment right to due process.

Discussion

The SCDC defendants move for summary judgment on the federal claims under 42 U.S.C. § 1983 against them, asserting that Stile failed to exhaust his administrative remedies through grievance procedures at the jail with respect to the transport incident in September of 2014. Stile moves for summary judgment on the ground that the defendants' answers to interrogatories show that grievance procedures were not available or show that a material factual dispute exists as to whether they were available.

A prisoner cannot bring claims under § 1983 to challenge the conditions of his confinement unless he has exhausted available administrative remedies. 42 U.S.C. § 1997e(a). To

3

satisfy that requirement, a plaintiff must properly use all of the steps provided. Woodford v. Ngo, 548 U.S. 81, 93 (2006). A plaintiff's failure to exhaust administrative remedies is an affirmative defense. Jones v. Bock, 549 U.S. 199, 216 (2007).

A. <u>SCDC Grievance Procedure</u>

The SCDC defendants filed a copy of the Operational Guideline, 3.6.04, Inmate Grievance Procedure, that was in effect from 2013 to 2015 while Stile was a detainee at the SCDC. <u>See</u> Aff. Gwen Weisgarber, Captain, SCDC, Doc. 36-2; Doc. 36-3. They also filed a copy of the Inmate Handbook that was in effect at that time. Stile acknowledges that the SCDC had a three-part grievance procedure while he was detained there.

The grievance procedure is mandatory for an inmate to receive a remedy. The procedure is provided to inmates in the Inmate Handbook. Doc. 36-4. An inmate may make a verbal informal complaint to a staff member within seven days of discovering a grievable issue. Doc. 36-4, at 10. For any condition or issue that requires action or a remedy, an inmate must file a formal written grievance on a grievance form within fourteen days of the issue or incident. <u>Id.</u> at 11. The inmate will be provided an inmate grievance form by a staff member.

The inmate gives the completed grievance form to the Unit Officer, and the inmate will be provided with a copy of the

4

grievance, if requested. The Unit Supervisor will resolve the grievance if possible, but otherwise the duty shift supervisor will address the grievance. The shift supervisor will address the grievance within five business days, return the original to the inmate, and place a copy in the inmate's Booking Folder. Doc. 36-4, at 11.

If the inmate is not satisfied with the shift supervisor's response, he must submit the grievance to the "Lieutenant-Operations and Security" or his designee within five business days. Id. The Lieutenant will respond in writing within five business days, and a copy will be placed in the Booking Folder. Id.

At the third step, if the inmate is still not satisfied with the response, within five business days he must request a further administrative remedy. Id. at 12. A Grievance Committee would then be convened, with members designated by the Superintendent "on an as-needed basis." Id. An inmate may appear before the Committee. The Committee's decision will be in writing and the inmate will sign the decision to show that he was notified of it. A copy will be filed in the inmate's Booking Folder. Id.

B.  Grievance of the September 5, 2014, Incident

Stile acknowledges in his motion for summary judgment that "there is a grievance procedure [at SCDC] and that he did not use it fully" to file a grievance pertaining to the September 5, 2014, incident.  Doc. 52, at 5.  The grievance logs and copies of grievances that Stile and the defendants submit show that Stile filed many grievances during the relevant period but none that complained about the SCDC defendants' actions during the September 5, 2014, incident.

On September 5, 2014, Stile filed a grievance at 8:00 am stating that officers brought him to booking without giving him medication and without providing him with denture adhesive.  On September 8, the reply was that the officers "reported an altercation in booking & then transport prior to being medicated."  Doc. 36-5, Ex. C, at 118.  Stile wrote at the bottom:  "Lie—Review Video."[1]

Stile filed several grievances during the late evening of September 5, which show that he was in "medical".  At 11:20 pm, Stile filed a grievance about the food he was given to take with him for the court appearance and about his lack of dentures during the court appearance.  Id. at 119.  The response states

---

[1] While that grievance addresses some events that occurred when Stile was removed from his cell for transport to Maine, it does not raise the issues that he alleges in his claims against the SCDC defendants in Claims 1 and 6.

6

that Stile refused to meet with the officer about his grievance and notes that he filed thirteen grievances between September 4 and September 7, 2014.

Stile filed another grievance at 11:31 pm that he was not given his prescribed medication at 4:30 pm when he returned to the jail from court. Id. at 120. The response on September 8 was that the officer discussed the matter with the medication staff. Also on September 5 at 11:31 pm, Stile requested that he have access to Catholic services on Saturday morning, and access was allowed. At 11:50 pm, Stile complained about the lights being on, which was preventing him from sleeping. Id. at 122.

The next day, September 6, Stile filed a grievance about not being able to participate in his defense for his criminal case because of restrictions imposed on him. Id. at 123. The response says that he was being provided with access to the law library and that he had been provided with a pen. He filed another grievance the same day about Officer Farrell and requesting more law library time to research issues for his criminal trial. The complaint about Farrell was forwarded to a supervisor and the law library issue was answered the same day, stating that Stile "was in fact given opportunity when it became available." Id. at 124.

On Sunday, September 7, Stile complained about the number and quality of his pillows. He also complained about the

orthopedic specialist who apparently examined Stile and provided an opinion that Stile disputed. Id. at 125-28.

Later on September 7, Stile filed a grievance that referenced the transport from SCDC to court. Stile first demanded a medical test that is redacted. He also asked the SCDC to "Call USMS [United States Marshals Service] and insist that I am transported to Court not as if I am a piece of Samsonite Luggage but as a human being who is suffering from an [redacted] not yet diagnosed and that improper transport and assault like what ocurred [sic] here Sept. 5, 2014 could cause me to become paralyzed."[2] Id. at 129. That grievance was forwarded to "Medical (Tracy)" on the same day. Id.

At 12:02 pm on September 7, Stile stated that he did not want to see "your P.A." because Stile disagreed with his opinion and believed the P.A. was incompetent. At 12:05 pm, Stile asked that the medical unit prioritize the use of the law computer for those, such as Stile, who had pro se cases. On September 8, Stile complained that Tracy Warren in the medical department asked him about his wounds, which Stile interpreted to mean that there was no report of his injuries from September 5, 2014.

---

[2] As stated, the grievance addressed only the conditions during transport, which according to Stile's complaint was done by deputies of the Strafford County Sheriff's Office. Claim 2.

8

Warren responded that his wounds were properly documented and that she was trying to talk with Stile about them.  Id. at 132.

Stile filed a grievance on September 9 that responded to the answer he received to a prior grievance about medical sick call.  He stated that Warren lied in her response to him and was incapable of reading the doctor's report.  Warren's response the same day was "addended plan being sent."  Id. at 133.  Stile then filed a grievance that had to do with his reports about his smoking, and Warren responded, "What are you grieving here?"  Id. at 134.  Stile filed fourteen more grievances on September 9 that appear to challenge his medical treatment and argue with Warren's responses.  He continued to file grievances about medical care on September 10.

On September 11, Stile filed a grievance about his glasses, which were provided to him.  He then filed many more grievances about his medical care and his access to medications.  The grievances about medical care continue on September 12, along with a grievance about holes in his socks.  None of the many grievances filed thereafter and through September 28, 2014, addressed the September 5, 2014, incident.

The references to the September 5 incident in the grievances filed on September 5 and 7 did not exhaust the administrative procedure.  As Stile acknowledges, he did not

9

appeal those grievances.³ Therefore, Stile did not exhaust his administrative remedies for the § 1983 claims against the SCDC defendants that arose from the September 5, 2014, incident.

C. Available Remedies

Stile contends that his failure to exhaust the SCDC administrative procedures, with respect to the September 5 incident, was not his fault. Instead, he argues, the lack of exhaustion was "through thwarting of the process by the Defendants." Doc. 52, at 5.

1. Standard

An inmate is required to exhaust available remedies, and available remedies means the remedies that are "capable of use for the accomplishment of a purpose" and remedies that are "accessible or may be obtained." Ross v. Blake, 136 S. Ct. 1850, 1858 (2016) (internal quotation marks omitted). The Supreme Court has identified "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." Id. at 1859.

The first circumstance occurs when "an administrative procedure . . . operates as a simple dead end—with officers

---

³ As is noted above, the cited grievances do not address the claims brought here.

unable or consistently unwilling to provide any relief to aggrieved inmates." Id. For example, the first circumstance would exist when "a prison handbook directs inmates to submit their grievances to a particular administrative office—but in practice that office disclaims the capacity to consider those petitions." Id. Another example would be "if administrative officials have apparent authority, but decline ever to exercise it." Id.

The second circumstance occurs when "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." Id. An administrative procedure is opaque if "no ordinary prisoner can discern or navigate" the process. Id. The third circumstance occurs "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. at 1860.

### 2. Application

The exhibits submitted by Stile and the SCDC defendants show that Stile filed more than two hundred grievances. The SCDC defendants represent, and Stile does not dispute, that he did not file appeals of any of his grievances. Stile contends that the SCDC grievance procedure was unavailable to him because the SCDC had no standing Grievance Committee. He cites no

11

situation where he appealed a grievance and was denied a hearing before a Grievance Committee.

In addition, Stile accuses the SCDC of being sloppy in administering the grievance procedures and needing training. He states that for purposes of this case the SCDC defendants provided him with 235 grievances that he filed while he was held at SCDC and that he reviewed 168 of those grievances. He contends that 127 of his grievances were "'incorrect' because of staff error." Doc. 52 at 7. He provides no explanation or evidence about what error occurred.

Stile also states that the grievances show that he asked for copies of his grievances that were not provided. The single cited grievance, however, was answered: "C/O Garcia states he was never given any physical grievances just verbal." Doc. 52-2, at 1. He also does not explain what prejudice he experienced due to a lack of copies. Therefore, Stile has not shown that the SCDC officers thwarted his efforts to file grievances by failing to provide copies.

He cites a grievance that he filed in January of 2015 about other grievances not being answered. That grievance was referred to Lieutenant Brackett. The documents submitted show that he received answers to his many grievances. His request in January of 2015 that officers have remedial training in handling

12

grievances was noted as not being a grievance, and Stile was told to file a request.

Stile's unsupported criticisms of the SCDC grievance procedures do not show that administrative remedies were unavailable to him.

D. Result

Stile did not properly exhaust the § 1983 claims he alleges against the SCDC defendants. As a result, those claims must be dismissed. The § 1983 claims against the SCDC defendants, with reference to the claims listed in the court's order issued on February 5, 2019, document no. 54, are Claims 1(a), 6(a), and 6(b).

Conclusion

For the foregoing reasons, the SCDC defendants' motion for summary judgment (document no. 36) is granted. Stile's motion for summary judgment (document no. 52) is denied.

The claims that remain in this case are the following:

1. SCDC corrections officers Farrell and Hayden used
excessive force against Stile, in that Farrell and Hayden
shackled and handcuffed Stile, and then dragged him to the
SCDC garage sallyport on September 5, 2014:
    b. rendering Farrell and Hayden liable to Stile for
the intentional torts of assault and battery, under state
law; and

c. rendering Strafford County vicariously liable to
Stile under state law for the SCDC officers' tortious
conduct.

2. Defendants SCSO Deputies Clement and Dossett used
excessive force against Stile, in that they operated the
van on September 5, 2014 in a manner intending to make
Stile (while handcuffed and shackled) bounce against the
van walls, causing Stile to suffer pain and physical
injuries:
     a. rendering Clement and Dossett liable to Stile for
violating Stile's Fourteenth Amendment right to due
process, under 42 U.S.C. § 1983;
     b. rendering Clement and Dossett liable to Stile for
(i) negligence; or (ii) the intentional torts of assault
and battery, under state law; and
     c. rendering Strafford County vicariously liable to
Stile under state law for the SCSO deputies' tortious
conduct.

6. SCDC Superintendent Pelkie (i.) authorized Farrell and
Hayden to shackle, handcuff, and then drag Stile to the
SCDC sallyport on September 5, 2014, and (ii.) failed to
train Farrell and Hayden relating to the use of shackles
and handcuffs:
     c. rendering Pelkie liable to Stile for negligence,
under state law; and
     d. rendering Strafford County vicariously liable to
Stile under state law for Pelkie's tortious conduct.

7. Strafford County Sheriff David Dubois (i.) maintained a
fleet of unsafe transport vans; and (ii.) failed to train
defendants Clement and Dossett relating to the safe
transport of detainees in the SCDC vans:
     a. rendering Dubois liable to Stile for violating
Stile's Fourteenth Amendment due process rights, under 42
U.S.C. § 1983;
     b. rendering Strafford County liable to Stile for
violating Stile's Fourteenth Amendment due process rights,
under 42 U.S.C. § 1983;
     c. rendering Dubois liable to Stile for negligence
under state law; and
     d. rendering Strafford County vicariously liable to
Stile under state law for Dubois's tortious conduct.

9. Strafford County and the United States Marshals Service for the District of Maine entered an agreement to house federal pretrial detainees at the Strafford County Department of Corrections and to provide transportation to detainees, including Stile, for medical and court appointments. Stile was an intended third-party beneficiary of that agreement. Strafford County and the Marshals Service breached the agreement when Stile was transported by officers who were not trained or not properly trained in a cargo van that lacked appropriate safety protections and minimum comforts and did not comply with the requirements of state and federal law, which caused Stile to be injured.

10. United States Marshals Service officers, Alex Patnode, Dean Knightly, and Randy Ossinger, signed the agreement with Strafford County for housing and transporting federal pretrial detainees and were grossly negligent in failing to inspect and ensure that the transportation provided by Strafford County was safe and complied with the agreement. Their gross negligence resulted in Stile being injured while being transported by officers or employees of the Strafford County Department of Corrections, rendering the United States liable under the Federal Tort Claims Act, 28 U.S.C. § 2674.

SO ORDERED.

/s/ Joseph A. DiClerico, Jr.
Joseph A. DiClerico, Jr.
United States District Judge

April 8, 2019

cc: James Stile, pro se
    Corey M. Belobrow, Esq.
    Brian J.S. Cullen, Esq.
    Michael T. McCormack, Esq.